UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLY GENE DRAKE,

Petitioner,

v.

THOMAS MACKIE,

RESPONDENT.

_____/

CASE NO. 2:14-cv-12300

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
PATRICIA T. MORRIS

**OPINION AND ORDER
DENYING THE AMENDED HABEAS CORPUS PETITION
DENYING A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO APPEAL _IN FORMA PAUPERIS_**

## I. INTRODUCTION

This matter has come before the Court on petitioner Billy Gene Drake's *pro se* amended petition for the writ of habeas corpus under 28 U.S.C. § 2254. The Petition challenges Petitioner's state convictions for First-Degree Murder, Mich. Comp. Laws §750.316(1)(a), Assault with Intent to Commit Murder, Mich. Comp. Laws § 750.83, and Possession of a Firearm During the Commission of a Felony (felony firearm), Mich. Comp. Laws § 750.227b. Petitioner alleges as grounds for habeas relief that his trial and appellate attorneys were ineffective and that the trial court's rulings on the availability of a witness and a request for a jury instruction

were erroneous.  None of these claims warrant habeas relief.  Accordingly, the Petition will be denied.

## II. BACKGROUND

The charges against Petitioner arose from two shootings in Port Huron, Michigan on June 17, 2010.  As explained by the state court, the shootings

> claimed the life of Chester Chapman and injured Chester's cousin, Jerry Chapman. The shootings occurred a few hours after an acquaintance of defendant, Travis [Watson], was involved in an argument with Jerry's brother, Terry Chapman.  The Chapman family was preparing to leave a family member's residence when defendant and Travis walked toward the residence from opposite directions. Witnesses testified that a verbal argument ensued between Travis and Terry, at which point Travis called defendant over to the residence and instructed him to "do it."  Although defendant had the gun pointed at another family member's head, Chester and Jerry were both shot.  Chester died a short time later as a result of the shooting.

*People v. Drake*, No. 303941, 2012 WL 2335343, at *1 (Mich. Ct. App. June 19, 2012).

Petitioner was tried before a jury in St. Clair County Circuit Court.  His defense was that he was in Detroit at the time of the shootings.  On March 11, 2011, the jury found Petitioner guilty, as charged, of First-Degree Murder, Assault with Intent to Commit Murder, and Felony Firearm.  On April 13, 2011, the trial court sentenced Petitioner to two years in prison for the felony-firearm conviction, followed by concurrent terms of life imprisonment for the murder conviction and forty to eighty years in prison for the assault conviction.

Petitioner appealed his convictions as of right, arguing that (1) his trial attorney was ineffective for failing to object to hearsay, (2) the trial court erroneously denied his request for a jury instruction on Manslaughter, and (3) the trial court deprived him of his right to confront a witness by ruling that a witness was unavailable. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions in an unpublished, *per curiam* opinion. *See id*. Petitioner raised the same issues in an application for leave to appeal in the Michigan Supreme Court. On December 26, 2012, the Michigan Supreme Court denied leave to appeal. *See People v. Drake*, 493 Mich. 919; 823 N.W.2d 598 (2012) (table).

On October 9, 2013, Petitioner filed his first federal habeas corpus petition. He claimed that: (1) trial counsel was ineffective for failing to investigate and present a manslaughter defense instead of an alibi defense; (2) the trial court erroneously refused to re-read testimony to the jury during its deliberations; (3) trial counsel was ineffective for failing to present an expert witness on Deoxyribonucleic Acid (DNA); and (4) appellate counsel was ineffective for failing to present these issues to the Michigan Court of Appeals during Petitioner's appeal of right. This Court summarily dismissed the petition without prejudice

because Petitioner had failed to exhaust state remedies for his claims. *See Drake v. Rivard*, No. 2:13-cv-14281 (E.D. Mich. Oct. 28, 2013).

Petitioner subsequently raised his unexhausted claims in a motion for relief from judgment in the state trial court. While the post-conviction motion was pending in state court, Petitioner commenced this action. *See* Dkt. No. 1. In his habeas petition, he raised the three issues that he presented to the state court on direct appeal. In a separate motion, he moved to hold his habeas petition in abeyance while he continued to pursue state remedies. *See* Dkt. No. 3. On July 9, 2014, the Court granted Petitioner's motion for a stay and closed this case for administrative purposes. *See* Dkt. No. 8.

The state trial court subsequently denied Petitioner's motion for relief from judgment because Petitioner could have raised his claims about trial counsel in the appeal of right and he failed to show that appellate counsel was ineffective for not raising the claims on appeal. The state court also found no merit in Petitioner's claims. *See People v. Drake*, No. 10-002434-FC (St. Clair Cty Cir. Ct. Jan. 22, 2015).

Petitioner appealed the trial court's decision to the Michigan Court of Appeals, which denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). Specifically, the Court of Appeals stated

that Petitioner could have raised his claims previously and failed to establish "good cause" for not doing so and actual prejudice from the irregularities alleged. *See People v. Drake*, No. 327099 (Mich. Ct. App. June 18, 2015). On May 24, 2016, the Michigan Supreme Court likewise denied leave to appeal under Michigan Court Rule 6.508(D). *See People v. Drake*, 499 Mich. 926; 878 N.W.2d 840 (2016) (table).

On June 30, 2016, Petitioner returned to this Court with an Amended Habeas Corpus Petition (Dkt. No. 9) and a Motion to Re-Open this Case (Dkt. No. 11). The Amended Petition alleges as grounds for relief the three claims that Petitioner presented to the state court on direct appeal and the three claims that he raised in his state-court motion for relief from judgment and subsequent appeal. The Court granted Petitioner's Motion and re-opened this case. *See* Dkt. No. 15.

Respondent Thomas Mackie argues in his Response to the Amended Petition that Petitioner's claims are procedurally defaulted, time-barred, meritless, or not cognizable on habeas review. *See* Dkt. No. 19. Petitioner replies that all of his claims are properly before the Court. *See* Dkt. No. 21.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter 'adjudicated on the merits in

State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

## IV. ANALYSIS

### A. Ineffective Assistance:  Failure to Object to Alleged Hearsay

Travis Watson voluntarily reported to the police one day after the shooting and subsequently cooperated with the police.  He did not testify at Petitioner's trial, but Sergeant Joseph Platzer, the lead investigator on the case, testified that the information Travis provided to the police during an interview "was consistent with the information that [the police] obtained during [their] investigation." *See* 3/8/11 Trial Tr., at 976 (Dkt. No. 20-10, p. 41 (Pg. ID 736).  Petitioner alleges that his trial attorney should have objected to this testimony because Sergeant Platzer's testimony about a non-testifying co-defendant's statement was inadmissible hearsay.   Petitioner also claims that Sergeant Platzer's testimony violated his right of confrontation.

The Michigan Court of Appeals rejected Petitioner's claim on direct appeal because the officer's testimony was not specific enough to fall within the definition of hearsay and, therefore, any objection would have been overruled.  The Court of Appeals concluded that defense counsel was not ineffective for failing to advance a futile argument.

### 1. Clearly Established Federal Law

To prevail on his ineffective-assistance-of-counsel claim, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is

whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

## 2. Application

The Sixth Amendment guarantees a defendant in a criminal prosecution "the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This clause "does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Idaho v. Wright*, 497 U.S. 805, 813 (1990). Moreover, the Michigan Court of Appeals determined that Sergeant Platzer's testimony was not specific enough to constitute hearsay under Michigan law. The state court's interpretation of state law binds this Court on habeas corpus review, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and because the Michigan Court of Appeals concluded that the officer's disputed comment was not hearsay, defense counsel was not ineffective for failing to object to the officer's testimony. An objection would have been futile, and "failing to make a futile motion is neither unreasonable nor prejudicial." *Jacobs v. Sherman*, 301 F. App'x 463, 470 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687).

Petitioner, nevertheless, claims that Sergeant Platzer's testimony violated his right of confrontation as interpreted by the Supreme Court in *Bruton v. United*

*States*, 391 U.S. 123 (1968), and in *Crawford v. Washington*, 541 U.S. 36 (2004). The Supreme Court held in *Crawford* that testimonial hearsay may not be introduced against a defendant in a criminal trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the person. *Crawford*, 541 U.S. at 68. Under *Bruton*, "a defendant is deprived of his rights under the Confrontation Clause when his codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Cruz v. New York*, 481 U.S. 186, 187-88 (1987).

Petitioner's reliance on *Bruton* is misplaced because Travis technically was not a co-defendant at the time of Petitioner's trial. He had not been charged in the case, *see* 3/8/11 Trial Tr., at 1020, Dkt. No. 20-10, p. 52 (Pg. ID 747), and was still under investigation, 3/9/11 Trial Tr., at 1094-95, Dkt. No. 20-11, p. 14 (Pg. ID 766).

*Crawford* is more relevant because Travis was not available at trial, and Petitioner did not have an opportunity to cross-examine him on a prior occasion. Sergeant Platzer, however, never informed the jury what Travis told the police. Because Sergeant Platzer did not testify that Travis made a statement against Petitioner, Petitioner's rights under the Confrontation Clause were not violated.

10

*See United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) (concluding that the defendant's right of confrontation was not violated by an officer's testimony that the police acquired enough information to get a search warrant, because the officer did not "put before the jury any statements made by the [out of court witness]"). In other words, testimony that does not reveal any specific statement made by a nontestifying declarant and that merely provides background information about the course of the investigation does not violate the Confrontation Clause. *United States v. Pugh*, 273 F. App'x 449, 455 (6th Cir. 2008).

The Court concludes that Sergeant Platzer's brief testimony about Travis's cooperation in the case did not violate Petitioner's right of confrontation. Therefore, trial counsel was not ineffective for failing to object to the testimony, and the state appellate court's rejection of Petitioner's ineffective-assistance-of-counsel claim was objectively reasonable.

## B. The Jury Instructions

Petitioner alleges next that the trial court erred when it denied his request for a jury instruction on Manslaughter. *See* 3/10/11 Trial Tr., at 1416, Dkt. No. 20-12, p. 37 (Pg. ID 847). Petitioner maintains that an instruction on Manslaughter was justified because there was evidence that Jerry Chapman was schizophrenic and

became violent and hostile when he was not taking his medication. Petitioner claims that there was additional evidence that Jerry was agitated before the shooting, was "getting hyped," and was ready to fight. According to Petitioner, Jerry's disposition was a basis for instructing the jury on Manslaughter, and the trial court violated his right to due process by not giving the instruction.

The Michigan Court of Appeals agreed that Manslaughter was a necessarily-included lesser offense of murder, but the Court of Appeals determined that a manslaughter instruction was not rationally supported by the evidence and that the trial court did not abuse its discretion by denying Petitioner's request for the instruction. The Court of Appeals also determined that the alleged error was harmless.

### 1. Legal Framework

The Supreme Court has not determined whether the failure to give jury instructions on lesser-included offenses in non-capital cases such as this one violates the right to due process. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (stating that "[w]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case"). Thus, the "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission

inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*)).

Even if this case were deemed comparable to a capital case,[1] a lesser-included offense instruction is not required when the evidence does not support it. *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). In Michigan,

> Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation which characterizes the offense of manslaughter separates it from murder.

*People v. Pouncey*, 437 Mich. 382, 388; 471 N.W.2d 346, 350 (1991). Voluntary manslaughter has the following components:

> First, the defendant must kill in the heat of passion. Second, the passion must be caused by an adequate provocation. Finally, there cannot be a lapse of time during which a reasonable person could control his passions.

*Id*. "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *Id.,* 437 Mich. at 389; 471 N.W.2d at 350. "In addition, the provocation

---

[1] Petitioner was charged with first-degree murder, an offense that carries the State's most severe penalty upon conviction, namely, life imprisonment without the possibility of parole. *See* Mich. Comp. Laws § 750.316(1).

must be adequate, namely, that which would cause the reasonable person to lose control." *Id*.

## 2. Application

Eyewitnesses to the shooting testified that Petitioner and Travis Watson approached them from opposite directions on the day in question. Travis was on the same side of the street as the Chapmans, whereas Petitioner was walking on the opposite side of the street. Travis called Petitioner or motioned to him and told him to "do it." Petitioner then pulled out a gun and fired at the group without any hesitation and without saying anything. Although there was testimony that, immediately before the shooting, Jerry Chapman was upset, agitated, and talking loudly, there was no evidence that he or anybody else in the Chapman group was armed or a serious threat to Petitioner or Travis. One witness, in fact, testified that it did not appear a fight was imminent.

To conclude, there was insufficient evidence that Petitioner was provoked into shooting, and the evidence did not support a jury instruction on Voluntary Manslaughter. The state trial court did not violate Petitioner's right to due process by declining to give the instruction, and the state appellate court's decision affirming the trial court's ruling was objectively reasonable.

Even if constitutional error occurred, the jurors were instructed on Second-Degree Murder, which is a lesser offense of First-Degree Murder. They chose not to convict Petitioner of the lesser offense of Second-Degree Murder, and there is no reason to believe that they would have opted to convict Petitioner of the still lesser offense of Voluntary Manslaughter. Thus, the failure to instruct the jury on Voluntary Manslaughter was, at most, harmless error. *Abdus-Samad v. Bell*, 420 F.3d 614, 628 (6th Cir. 2005).

## C. The Ruling on the Availability of a Witness

Petitioner asserts that the trial court erred when it ruled that Jerry Chapman was unavailable to testify. Jerry was the assault victim, and although his name was on the witness list, the prosecutor moved to have him declared unavailable due to his mental illness. After taking testimony from Jerry's guardian and discussing the matter with the attorneys, the trial court declared Jerry unavailable. *See* 3/9/11 Trial Tr., at 1105-34, Dkt. No. 20-11, pp. 17-24 (Pg. ID 769-76); 3/10/11 Trial Tr., at 1316-24, Dkt. No. 20-12, pp. 12-14 (Pg. ID 822-24). Petitioner asserts that the trial court's ruling deprived him of his right to confront Jerry and his right to elicit testimony that would have supported his request for a jury instruction on Manslaughter.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error affecting [Petitioner's] substantial rights." *Drake*, 2012 WL 2335343, at *2. The Court of Appeals pointed out that, although defense counsel partially raised the issue with the trial court, he never asked the trial court to compel Jerry to testify. In light of this ruling, Respondent argues that Petitioner procedurally defaulted his claim.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Ordinarily, a procedural default is not a jurisdictional matter, *Johnson v. Lee*, 136 S. Ct. 1802, 1806 (2016) (citing *Trest*, 522 U.S. at 89), and " '[j]udicial economy might counsel' bypassing a procedural-default question if the merits 'were easily resolvable against the habeas petitioner.' " *Id.* (quoting *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Petitioner's claim does not warrant habeas relief, and the Court finds it more efficient to address the substantive merits of Petitioner's claim than to determine whether the claim is procedurally defaulted. The Court, therefore, excuses the alleged procedural default and proceeds to address Petitioner's claim on the merits, as a procedural-default analysis "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

The Court finds no merit in Petitioner's claim. To begin, Petitioner's claim that the trial court relied on the wrong court rule and violated his right to elicit relevant evidence under Michigan Rule of Evidence 401 is not a cognizable claim on habeas review, because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Second, "the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses . . . ." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Further, "[t]here is no clearly established Supreme Court authority stating that a defendant's right of confrontation requires the victims of an offense to participate in a criminal prosecution by appearing in court or otherwise attending the trial." *Ray v. Cate*, No. C 10-01582 YGR (RR), 2013 WL 2456567, at *15 (N.D. Cal. June 6, 2013) (unpublished), *aff'd sub nom. Ray v. Beard*, 654 F. App'x 865 (9th Cir. 2016), *cert. denied sub nom. Ray v. Kernan*, 137 S. Ct. 451 (2016).

Third, although defense counsel was not convinced that Jerry was incompetent to testify, he ultimately stipulated that Jerry was unavailable. *See*

3/10/11 Trial Tr., at 1417, Dkt. No. 20-12, p. 37 (Pg. ID 847).[2]  A party may not

complain of Confrontation Clause errors that he himself invited.  *Cromer*, 389 F.3d

678 n. 11 (quoting *Harvis v. Roadway Express, Inc.,* 923 F.2d 59, 60 (6th Cir.

1991)).

Fourth, under state law, a witness is unavailable if he or she "is unable to be

present or to testify at the hearing because of . . . then existing . . . mental illness or

infirmity."  Mich. R. Evid. 804(a)(4).  "Although the 'unavailability' requirement

is inexact," the prosecution generally has to make "a 'good-faith effort' to obtain

the presence of a witness before [he or] she can be considered 'unavailable.' "

*Sherley v. Seabold*, 929 F.2d 272, 273 (6th Cir. 1991) (quoting *United States v.*

*Quinn*, 901 F.2d 522, 527 (6th Cir. 1990)).  The record in this case reveals that

Jerry was diagnosed with schizophrenia and had been appointed a guardian.
During trial, his guardian advised the court that Jerry had stopped taking
medication for his schizophrenia sometime before defendant's preliminary
examination and that, as a result,     he often made no sense when speaking.  The
trial court was reluctant to issue a bench     warrant and asked for Jerry's family
to have him evaluated to see whether he could be   forced to testify.    Jerry was
nevertheless subpoenaed to testify at defendant's trial.     However, Jerry did  not
appear.  And, although the prosecutor had asked Jerry's family to      get     him
back on his medication, the family was ultimately unable to do so.    Instead,
another court granted a petition to involuntarily commit Jerry.

---

[2]  *See also* 3/10/11 Trial Tr., at 1484, Dkt. No. 20-12, p. 54 (Pg. ID 864) (the trial court's jury
instruction regarding the parties' stipulation that Jerry was mentally ill and unavailable to
testify).

*Drake*, 2012 WL 2335343, at *3.  In addition,

> [t]he prosecutor stated, on the record, that Jerry had been brought to
> his office the week before and had been extremely disheveled and was
> making no sense.  The prosecutor stated that the probate court had
> issued an involuntary pickup order and that Jerry was being held in
> the mental health unit.

*Id*.

Jerry's illness apparently was both severe and chronic.  As such, the trial
court's finding of unavailability was sound and well with the court's discretion.
*United States v. McGowan*, 590 F.3d 446, 455-56 (7th Cir. 2009).  Additionally,
the state appellate court's conclusions – that the prosecution made a good-faith
effort to secure Jerry's presence at trial and that no error occurred – were
objectively reasonable.

Finally, even if Petitioner's constitutional rights were violated, other
eyewitnesses testified about the shooting and about Jerry's actions immediately
before the shooting, and it is unlikely that Jerry's testimony would have helped
Petitioner's defense.  Thus, the trial court's alleged error could not have had a
"substantial and injurious effect or influence" on the jury's verdict and was
harmless.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

**D. Trial Counsel's Failure to Investigate and Use an Expert Witness**

Petitioner's next two claims raise additional issues about trial counsel. Petitioner raised these claims in his motion for relief from judgment and subsequent appeal. The state courts rejected the claims under Michigan Court Rule 6.508(D) because Petitioner could have raised the claims on direct appeal and failed to do so. Consequently, Respondent argues that Petitioner's claims are procedurally defaulted. Respondent also maintains that the claims are barred by the one-year statute of limitations.

The habeas statute-of-limitations defense is not jurisdictional. *Holland v. Florida*, 560 U.S. 631, 645 (2010) (quoting *Day v. McDonough*, 547 U.S. 198, 205 (2006)). A procedural default also is not a jurisdictional matter, and the Court finds no merit in Petitioner's claims. *Trest*, 522 U.S. at 89. Accordingly, the Court excuses the alleged procedural errors and cuts to the merits of Petitioner's claims.

**1. Failure to Investigate and Present a Defense**

Petitioner argues that his trial attorney was ineffective for failing to investigate the facts and obtain evidence to support a manslaughter defense.

The Supreme Court stated in *Strickland* that defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This duty

includes the obligation to investigate all witnesses who may have information concerning [a] client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). But "[a] defense counsel has no obligation to . . . interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quoting *Millender v. Adams*, 187 F. Supp.2d 852, 877 (E.D. Mich. 2002) (citing *Marra v. Larkins*, 111 F. Supp. 2d 575, 585 n. 13 (E.D. Pa. 2000)).

As explained above, the facts did not support a defense of manslaughter. *See supra*, Section IV.B. Furthermore, it does not appear that any additional investigation would have uncovered any evidence to support a manslaughter defense. Eyewitnesses to the shooting testified that the shooting was prompted by Travis Watson's comment to Petitioner to "do it." Defense counsel attempted to elicit testimony suggesting that Jerry might have provoked Petitioner into firing his gun, but the record indicates that Jerry was taking his medication at the time and that there was nothing particularly alarming about his behavior immediately before the shooting.

Furthermore, as the state trial court pointed out, reliance on a defense theory of manslaughter would have implied that Petitioner was the shooter. Trial counsel's choice of an alibi defense was reasonable because if it had been

successful, it would have exonerated Petitioner entirely of First-Degree and Second-Degree Murder. The Court concludes that defense counsel was not ineffective for allegedly failing to investigate facts related to a manslaughter defense.

### 2. Failure to Present a DNA Expert Witness

Petitioner alleges that his trial attorney was ineffective for failing to retain and present an expert witness on DNA evidence. The prosecution's expert witness testified that Petitioner could not be excluded from DNA found on the red shirt supposedly worn by the shooter. *See* 3/3/11 Trial Tr., at 455, Dkt. No. 20-8, p. 50 (Pg. ID 605). According to Petitioner, a defense expert could have helped him refute testimony provided by the prosecution's expert witness and strengthen his alibi defense.

Although "in some cases counsel would be deemed ineffective for failing to consult or rely on experts, . . . that formulation is sufficiently general that state courts would have wide latitude in applying it." *Richter*, 562 U.S. at 106. *Strickland* does not require an equal and opposite expert from the defense for every prosecution expert. *Id*. at 111. "There are . . . 'countless ways to provide effective assistance in any given case,'" and "[r]are are the situations in which the 'wide

latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.* at 106 (quoting *Strickland*, 466 U.S. at 689).

The record indicates that Petitioner's attorney requested funds for an expert witness and that the trial court authorized $500 for an initial consultation with a defense expert. It is not clear from the record why defense attorney did not produce an expert witness on DNA evidence at trial. Nevertheless, the prosecution's expert witness on DNA evidence did not go into a great deal of technical detail about her findings, and she explained that at least three people could have contributed their DNA to the mixture of DNA types that she found on the red shirt.

Defense counsel cross-examined the prosecution's expert witness and elicited testimony that she was unable to say when, where, or how the DNA was deposited on the shirt. *See* 3/3/11 Trial Tr., at 461, Dkt. No. 20-8, p. 51 (Pg ID 606). Defense counsel also pointed out to the jury that the police never bothered to test the red shirt for Travis Watson's DNA even though the police supposedly knew Travis was present during the shooting. *See* 3/3/11 Trial Tr., at 434-35 (Dkt. No. 20-8, p. 45, Pg. ID 600.)

Trial counsel's manner of handling the DNA issue was reasonable trial strategy. The use of a defense expert could have "transform[ed] the case into a

battle of the experts," and to support a defense that the prosecution did not prove its case, it is sometimes "better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Richter*, 562 U.S. at 108-09.

In conclusion, defense counsel was not ineffective for failing to produce a defense expert on DNA analysis. "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id*. at 107.

## E. Appellate Counsel

In his sixth and final claim, Petitioner alleges that his appellate counsel was ineffective.

Claims of ineffective assistance of appellate counsel are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). To prevail on his claims, Petitioner "must show that his [appellate] counsel's performance was deficient and that he was prejudiced as a result." *Id*. (citing *Strickland*, 466 U.S. at 687). This requires demonstrating (1) that appellate counsel acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that Petitioner would have prevailed on appeal if his attorney had raised

the issues.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).

Petitioner asserts that his appellate attorney was ineffective because the attorney failed to raise his previous two claims about trial counsel in the appeal of right.  Petitioner also asserts that his attorney filed the appeal without consulting him.

"An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' " *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Strickland,* 466 U.S. at 688), but an attorney is not required to raise every non-frivolous claim on appeal if counsel decides, as a matter of professional judgment, not to raise the claim.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Even if the Court were to assume that appellate counsel's performance was deficient, the two claims that Petitioner says his attorney should have raised on direct appeal lack merit for the reasons given in the previous section of this opinion.  *See supra*, Section IV.D.  Thus, counsel's allegedly deficient performance did not prejudice Petitioner, as there is not a reasonable probability that Petitioner would have prevailed on appeal if his attorney had consulted him and raised all of his claims on direct appeal.  "[B]y definition, appellate counsel cannot be ineffective for a failure

to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

## V. CONCLUSION AND ORDER

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts.

Accordingly, **IT IS ORDERED** that the Amended Petition for Writ of Habeas Corpus (Dkt. No. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In addition, reasonable jurists could not disagree with the Court's resolution of his constitutional claims, nor conclude that the issues are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* on appeal without further authorization from this Court because he was granted *in forma pauperis* in this Court (Dkt. No. 4), and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

SO ORDERED.

Dated:  June 25, 2018                              /s/Gershwin A. Drain
                                                   GERSHWIN A. DRAIN
                                                   United States District Judge


## CERTIFICATE OF SERVICE


Copies of this Order were served upon attorneys of record and on Billy Drake, #519089, Oaks Correctional Facility, 1500 Caberfae Highway, Manistee, MI 49660 on
June 25, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk